**IN THE UNITED STATES DISTRICT**
**FOR THE DISTRICT OF MARYLAND**
**(Baltimore Division)**

| | |
|---|---|
| WILLIAM PRICE<br>DEBORAH PRICE<br>607 PINE OAK AVENUE<br>EDGEWOOD, MD 21040<br><br>and<br><br>FRANK P. CHOVAN<br>11 ESTERO PLACE<br>MIDDLE RIVER, MD 21220<br><br>    *on their own behalf and on behalf of*<br>    *all others similarly situated,*<br><br>       Plaintiffs,<br><br>       v.<br><br>RALPH M. MURDY<br>D/B/A LAW OFFICES RALPH M. MURDY, ESQ.<br>7201 HARFORD ROAD<br>BALTIMORE, MD 21234<br><br>SAMUEL SPICER<br>2209 ADY ROAD<br>FOREST HILL, MD 21040<br><br>and<br><br>AUTO SMART, LLC<br>1545 PHILADELPHIA BLVD.<br>ABERDEEN, MD 21001<br><br>    Serve on:    JOSEPH V. BURKE JR.<br>               9660 DUNDAWN ROAD<br>               BALTIMORE, MD 21236<br><br>    Defendants. | JURY TRIAL DEMANDED<br><br><br><br><br><br><br><br><br><br><br><br><br><br>Case No. _____ |

## CLASS ACTION COMPLAINT

Plaintiffs William Price, Deborah Price and Frank Chovan (collectively "Named Plaintiffs"), on their own behalf and on behalf of all others similarly situated, through their attorney Cory L. Zajdel, Esq. and Z LAW, LLC, hereby submits this Class Action Complaint against Defendant Law Offices Ralph M. Murdy ("Murdy"), Defendant Samuel Spicer ("Spicer") and Defendant Auto Smart, LLC ("Auto Smart") (collectively "Defendants") for support states as follows:

## I.    PRELIMINARY STATEMENT

1.     Named Plaintiffs institute this class action against Spicer, Auto Smart and Murdy on their own behalf and on behalf of all others similarly situated for violating state and federal statutes and seek to recover actual damages, statutory damages, interest and the costs of this action against Defendants for multiple violations of *Maryland's Consumer Loan Law*, MD. CODE ANN., COMM. LAW §§ 12-301 *et seq.* ("MCLL"), *Maryland's Consumer Debt Collection Act*, MD. CODE ANN., COMM. LAW §§ 14-201 *et seq.* ("MCDCA") and *Racketeer Influenced and Corrupt Organizations Act*, 18 U.S.C. §§ 1961 *et seq.* ("RICO").

2.     Auto Smart is a Maryland motor vehicle dealer selling motor vehicles to consumers out of a dealership located in Harford County, Maryland.

3.     Auto Smart helps its customers provide financing for the sale of its motor vehicles.

4.     Auto Smart was provided a lump sum or series of lump sum investments from Spicer to finance motor vehicles sold from the Auto Smart dealership.

5.     After Auto Smart agreed on a purchase price for the motor vehicle, Spicer would provide financing for the purchase of the motor vehicle.

6.      Auto Smart accepted payments on all of Spicer's loans and maintained records for each account.

7.      Spicer is a sub-prime lender and extends credit on average at a *stated* simple interest rate of twenty four percent (24%).

8.      Spicer has extended financing for personal property to more than one hundred borrowers from 2004 to the present - many of these loans originated from a sale of a motor vehicle by Auto Smart.

9.      Spicer has extended financing for personal property to individuals that are residents of states other than Maryland.

10.     From 2004 to the present, Spicer repossessed personal property originated from credit contracts from more than one hundred borrowers.

11.     More than one hundred financing contracts Spicer extended to borrowers between 2004 and the present are governed by MCLL.

12.     MCLL specifically requires a lender to be licensed in order to issue any loans.

13.     Spicer violated the MCLL by failing to obtain a lender license at any time under MCLL § 12-302.

14.     As part of his general business practices, Spicer charges and collects from every borrower substantial and illegal interest and charges with respect to the MCLL loans from each loan account.

15.     MCLL, however, specifically restricts any person from charging or collecting interest or fees unless specifically provided for under the statute.

16.     Spicer hires Auto Smart to repossess the personal property.

17.     On behalf of Spicer, Auto Smart repossess the personal property even though Spicer does not have any security interest in the personal property.

18.     Auto Smart then places the motor vehicle back on its dealership for resale to the general public.

19.     Auto Smart sells the repossessed motor vehicles to a new purchaser.

20.     Spicer does not credit his borrowers accounts for the money received for the repossessed vehicles subsequent sale or waive the deficiency balance for the loan after the resale.

21.     Moreover, Spicer fails to tell his borrowers that the repossessed vehicles were resold to a new consumer or the amount he received for the repossessed motor vehicle.

22.     After a borrower defaults on a loan and/or Spicer repossesses the motor vehicle, Auto Smart and Spicer refer the defaulted loan to Murdy for collection.

23.     Murdy files collection law suits in Maryland state court on behalf of Spicer to collect on the defaulted loans.

24.     In each of these lawsuits, Murdy, on behalf of Spicer, requests recovery of alleged outstanding balances on the Spicer loans, additional fees, additional interest and attorney's fees.

25.     Spicer also violated the MCLL by charging and collecting interest at a rate not allowed by MCLL when he:  1) failed to provide any notices related to repossessing motor vehicles (MCLL § 12-306(a)(7)(iii)); 2) assessed compound interest (MCLL §§ 12-306(a)(6)(ii) and (d)(1)); and 3) charged attorney's fees not allowed by MCLL § 12-307.1.

26.     Through his blatant disregard of MCLL, Spicer has deprived his MCLL customers of valuable rights mandated by Maryland law.

27.     Spicer's failure to obtain a license under MCLL and pattern and practice of charging and collecting illegal interest and charges under MCLL makes this case particularly suitable for resolution through a class action lawsuit.

## II.     JURISDICTION

28.     This Court has jurisdiction over this action pursuant to 18 U.S.C. §§ 1961 *et seq.* and 28 U.S.C. § 1331.

29.     This Court has jurisdiction over this action pursuant to the *Class Action Fairness Act of 2005* ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (codified in various sections of 28 U.S.C.).

30.     This Court has jurisdiction over the remainder of the counts pursuant to 28 U.S.C. § 1367.

31.     This case concerns residents of many different states.

32.     The  amount in controversy exceeds five million dollars ($5,000,000.00).

33.     There are at least one hundred (100) members of the putative class.

34.     Venue is proper in this forum pursuant to 28 U.S.C. § 1391 because Defendant transacts business and may be found in this District and a substantial portion of the practices complained of herein occurred in the District of Maryland.

## III.     PARTIES

35.     Named Plaintiff William Price is a natural person currently residing at 607 Pine Oak Avenue, Edgewood, MD 21040.

36.     Named Plaintiff Deborah Price is a natural person currently residing at 607 Pine Oak Avenue, Edgewood, MD 21040.

37.     Named Plaintiff Frank Chovan is a natural person currently residing at 11 Estero Place, Middle River, MD 21220.

38.     Defendant Ralph M. Murdy is a natural person currently residing in Maryland and with a principal place of business located at 7201 Harford Road, Baltimore, MD 21234.  Ralph M. Murdy also does business as Law Offices of Ralph M. Murdy, Esq.

39.     Defendant Samuel Spicer is a natural person currently residing in Maryland and with a principal place of business located at 2209 Ady Road, Forest Hill, MD 21040.

40.     Defendant Auto Smart, LLC is a Maryland limited liability company principally in the business of selling motor vehicles to consumers from its principal place of business located at 1545 Philadelphia Boulevard, Aberdeen, MD 21001.

## IV.     <u>FACTUAL ALLEGATIONS</u>

### *Deborah and William Price*

41.     Prior to March 23, 2009, Named Plaintiffs Deborah and William Price purchased a Mercury Mountaineer (Price Motor Vehicle One) from Auto Smart.

42.     The Price Motor Vehicle One was financed by Spicer and memorialized in an Installment Note.

43.     The Price Motor Vehicle One was purchased and financed primarily for personal, family and household purposes.

44.     The total amount financed in the Installment Note for the Price Motor Vehicle One was less than six thousand dollars ($6,000.00).

45.     Spicer required twenty four percent (24%) interest in addition to the principal amount of the Installment Note.

46.     The Installment Note for the Price Motor Vehicle One is governed under Subtitle 3 of Title 12 of the Commercial Law Article (*i.e.* MCLL).

47.     Prior to March 23, 2009 but subsequent to the purchase of the Price Motor Vehicle One, Named Plaintiffs Deborah and William Price purchased a second motor vehicle (Price Motor Vehicle Two) from Auto Smart.

48.     The Price Motor Vehicle Two was financed by Spicer and memorialized in an Installment Note.

49.     The Price Motor Vehicle Two was purchased and financed primarily for personal, family and household purposes.

50.     The total amount financed in the Installment Note for the Price Motor Vehicle Two was less than six thousand dollars ($6,000.00).

51.     Spicer required twenty four percent (24%) interest in addition to the principal amount of the Installment Note.

52.     The Installment Note for the Price Motor Vehicle Two is governed under Subtitle 3 of Title 12 of the Commercial Law Article (*i.e.* MCLL).

53.     On or about March 23, 2009, Named Plaintiffs Deborah and William Price purchased a 1996 Ford (Price Motor Vehicle Three) from Auto Smart.

54.     The Price Motor Vehicle Three was financed by Spicer and memorialized in an Installment Note.

55.     The Price Motor Vehicle Three was purchased and financed primarily for personal, family and household purposes.

56.     The total amount financed in the Installment Note for the Price Motor Vehicle Three was five thousand three hundred nineteen dollars ($5,319.00).

57.     Spicer required fifteen percent (15%) interest in addition to the principal amount of the Installment Note.

58.     Spicer required repayment of the Installment Note on the Price Motor Vehicle Three in thirty three (33) monthly payments of two hundred dollars ($200.00) totaling six thousand six hundred dollars ($6,600.00).

59.     The Installment Note for the Price Motor Vehicle Three is governed under Subtitle 3 of Title 12 of the Commercial Law Article (*i.e.* MCLL).

60.     On the three dates Named Plaintiffs Deborah and William Price entered into the Installment Notes with Spicer for Price Motor Vehicles One, Two and Three (collectively the "Price Motor Vehicles"), Spicer was not licensed to issue consumer loans in Maryland.

61.     Throughout the life of the MCLL credit accounts on the Price Motor Vehicles, Named Plaintiffs Deborah and William Price  made numerous payments to Spicer.

62.     Spicer received payments from Named Plaintiffs Deborah and William Price on the Price Motor Vehicles totaling more than five thousand dollars ($5,000.00).

63.     While servicing the Installment Notes, Spicer assessed compound interest by adding any unpaid interest to the principal balance of the loans and charging interest in each succeeding month on the principal and past due balance (*i.e.* interest on interest).

64.     Spicer did not take a security interest in any of the Price Motor Vehicles.

65.     Spicer through his agent Auto Smart seized and repossessed the Price Motor Vehicle Three.

66.     Spicer did not provide Named Plaintiffs Deborah and William Price with any pre-sale or post-sale repossession notices.

67.    Auto Smart placed the repossessed Price Motor Vehicle Three for sale at its motor vehicle dealership and resold it to a new consumer.

68.    Auto Smart and Spicer shared in the proceeds of the resale of the Price Motor Vehicle Three.

69.    Named Plaintiffs Deborah and William Price did not receive any of the proceeds of the sale of the Price Motor Vehicle Three.

70.    Spicer did not credit any amounts from the sale of the Price Motor Vehicle Three resale towards any amount allegedly due and owing on the Installment Note.

71.    Spicer referred Named Plaintiff William Price's account for collection to Murdy.

72.    Murdy filed a debt collection law suit against Named Plaintiff William Price requesting five thousand five hundred sixty seven dollars and sixty three cents ($5,567.63) principal balance, four hundred thirty dollars and eighty six cents ($430.86) in interest, one thousand three hundred twenty dollars ($1,320) in late fees and five hundred fifty six dollars and seventy six cents ($556.76) in attorney's fees.

73.    The amounts requested by Spicer through Murdy for principal, interest, late fees and attorney's fees were all inflated or not recoverable.

74.    Spicer swore under oath and under the penalties of perjury that all of the facts in the debt collection law suit against Named Plaintiff William Price were true and that the documents attached to the debt collection law suit were accurate.

### *Frank Chovan*

75.    Prior to November 1, 2006, Named Plaintiff Frank Chovan purchased a 1996 Chevrolet Cavalier (Chovan Motor Vehicle One) from Auto Smart.

76. The Chovan Motor Vehicle One was financed by Spicer and memorialized in an Installment Note.

77. The Chovan Motor Vehicle One was purchased and financed primarily for personal, family and household purposes.

78. The total amount financed in the Installment Note for the Chovan Motor Vehicle One was less than six thousand dollars ($6,000.00).

79. Spicer required twenty four percent (24%) interest in addition to the principal amount of the Installment Note.

80. The Installment Note for the Chovan Motor Vehicle One is governed under Subtitle 3 of Title 12 of the Commercial Law Article (*i.e.* MCLL).

81. On or about November 1, 2006, Named Plaintiff Frank Chovan purchased a 1999 Ford Escort (Chovan Motor Vehicle Two) from Auto Smart.

82. The Chovan Motor Vehicle Two was financed by Spicer and memorialized in an Installment Note.

83. The Chovan Motor Vehicle Two was purchased and financed primarily for personal, family and household purposes.

84. The total amount financed in the Installment Note for the Chovan Motor Vehicle Two is five thousand five hundred dollars ($5,500.00).

85. Spicer required twenty four percent (24%) interest in addition to the principal amount of the Installment Note.

86. Spicer required repayment of the Installment Note on the Chovan Motor Vehicle Two in thirty (30) monthly payments of two hundred forty five dollars and fifty seven cents ($245.57) totaling seven thousand three hundred sixty seven dollars and ten cents ($7,367.10).

87.     The Installment Note for the Chovan Motor Vehicle Two is governed under Subtitle 3 of Title 12 of the Commercial Law Article (*i.e.* MCLL).

88.     On the two dates Named Plaintiff Frank Chovan entered into the Installment Notes with Spicer for the Chovan Motor Vehicles One and Two (collectively the "Chovan Motor Vehicles"), Spicer was not licensed to issue consumer loans in Maryland.

89.     Throughout the life of the MCLL credit accounts on the Chovan Motor Vehicles, Named Plaintiff Frank Chovan  made numerous payments to Spicer.

90.     Spicer received payments from Named Plaintiff Frank Chovan on the Chovan Motor Vehicles totaling more than three thousand five hundred dollars ($3,500.00).

91.     While servicing the Installment Notes, Spicer assessed compound interest by adding any unpaid interest to the principal balance of the loan and charging interest in each succeeding month on the principal and past due balance (*i.e.* interest on interest).

92.     In assessing compounding interest to Named Plaintiff Frank Chovan, Spicer inflated a five thousand five hundred dollars ($5,500.00) Installment Note on the Chovan Motor Vehicle Two into a twenty six thousand seven hundred eighty six dollar and sixty nine cent ($26,786.69) alleged debt.

93.     Spicer did not take a security interest in the Frank Chovan Motor Vehicles.

94.     Spicer through his agent Auto Smart seized and repossessed the Chovan Motor Vehicle Two.

95.     Spicer did not provide Named Plaintiff Frank Chovan with any pre-sale or post-sale repossession notices.

96.     Auto Smart placed the repossessed Chovan Motor Vehicle Two for sale at its motor vehicle dealership and resold it to a new consumer.

97.     Auto Smart and Spicer shared in the proceeds of the resale of the Chovan Motor Vehicle Two.

98.     Named Plaintiff Frank Chovan did not receive any of the proceeds of the sale of the Chovan Motor Vehicle Two.

99.     Spicer did not credit any amounts from the sale of the Chovan Motor Vehicle Two resale towards any amount allegedly due and owing on the Installment Note.

100.    Spicer referred Named Plaintiff Frank Chovan's account for collection to Murdy.

101.    Murdy filed a debt collection law suit against Named Plaintiff Frank Chovan requesting twenty six thousand seven hundred eighty six dollar and sixty nine cent ($26,786.69) principal balance and two thousand six hundred seventy eight dollars and sixty seven cents ($2,678.67) in attorney's fees.

102.    The amounts requested by Spicer through Murdy for principal, interest and attorney's fees were all inflated or not recoverable.

103.    Spicer swore under oath and under the penalties of perjury that all of the facts in the debt collection law suit against Named Plaintiff Frank Chovan were true and that the documents attached to the debt collection law suit were accurate.

## V.     CLASS ACTION ALLEGATIONS

104.    Named Plaintiffs bring this action on behalf of a Class which consists of:

> **All persons who entered into a credit contract to borrow money from Spicer between January 17, 2004 and the present and made a payment on the credit contract.**

Excluded from the Class are those individuals who now are or have ever been the spouses, parents, siblings and children of Spicer.

105.    The Class, as defined above, is identifiable.  The Named Plaintiffs are members of

the Class.

106.    The Class consists, at a minimum, of more than one hundred borrowers who entered into a MCLL credit contract directly with Spicer and is thus so numerous that joinder of all members is clearly impracticable.

107.    There are questions of law and fact which are not only common to the Class but which predominate over any questions affecting only individual class members.

108.    The common and predominating questions include, but are not limited to:

(a)  Whether Spicer is a "lender" under the MCLL;

(b)  Whether Spicer was required to obtain a license to make loans under the MCLL;

(c)  Whether Spicer was exempt from MCLL's licensing requirement to make loans under the MCLL;

(d) Whether Spicer obtained a license to make loans under the MCLL;

(e) Whether the MCLL allowed Spicer to compound interest to borrowers;

(e) Whether Spicer charged or collected compound interest to borrowers;

(f)  Whether the MCLL required Spicer to provide pre-sale or post-sale repossession notices to borrowers;

(g) Whether Spicer failed to provide any pre-sale or post-sale repossession notices in accordance with the MCLL; and

(f) Whether Spicer charged or collected attorney's fees not allowed by MCLL § 12-307.1.

109.    Claims of Named Plaintiffs are typical of the claims of the respective members of the Class and are based on and arise out of similar facts constituting the wrongful conduct of Spicer.

110.    Named Plaintiffs will fairly and adequately protect the interests of the Class.

111.    Named Plaintiffs is committed to vigorously litigating this matter.

112.    Further, Named Plaintiffs have secured counsel experienced in handling consumer class actions and complex consumer litigation.

113.    Neither Named Plaintiffs nor their counsel have any interests which might cause them not to vigorously pursue this claim.

114.    Spicer's actions are generally applicable to the respective Class as a whole, and Named Plaintiffs seek equitable remedies with respect to the Class as a whole within the meaning of FED. R. CIV. P. 23(b)(2).

115.    Common questions of law and fact enumerated above predominate over questions affecting only individual members of the Class.  FED. R. CIV. P. 23(b)(3).

116.    A class action is the superior method for fair and efficient adjudication of the controversy.  FED. R. CIV. P. 23(b)(3).

117.    The likelihood that individual members of the Class will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation.

118.    The likelihood that individual members of the Class will prosecute separate actions is remote also because each individual claim involves a small amount.

119.    Named Plaintiffs' counsel is experienced in class actions, and foresees little difficulty in the management of this case as a class action.

## VI. CAUSES OF ACTION

### COUNT ONE
(MCLL -- CLASS AGAINST SPICER)

120.    Named Plaintiffs re-allege and incorporate by reference the allegations set forth herein, and further allege:

121.    MCLL places numerous restrictions on a lender's ability to charge or collect certain amounts from borrowers.

122.    In violation of MCLL § 12-302, Spicer failed to obtain a lender license.

123.    In violation of MCLL § 12-306(a)(7)(iii), Spicer failed to provide any notices related to repossessing motor vehicles.

124.    In violation of MCLL §§ 12-306(a)(6)(ii) and (d)(1), Spicer charged and collected compound interest.

125.    In violation of MCLL § 12-307.1, Spicer charged and collected inflated or uncollectable attorney's fees.

126.    Spicer collected payments from each Class Member.

### COUNT TWO
(MCDCA -- Spicer, Auto Smart and Murdy)

127.    Named Plaintiffs William Price, Deborah Price and Frank Chovan re-allege and incorporate by reference the allegations set forth herein, and further allege:

128.    MCDCA restricts a "collector" from using certain categories of collection tactics in an attempt to collect a debt.

129.    Spicer and Murdy are "collector[s]" under the MCDCA.

130. In an attempt to collect the "debt" from Named Plaintiffs William Price, Deborah Price and Frank Chovan, Spicer and Murdy misrepresented to Named Plaintiffs William Price, Deborah Price and Frank Chovan that:

   a. Spicer was authorized to collect monies from Named Plaintiffs William Price, Deborah Price and Frank Chovan;

   b. Spicer was authorized to file and maintain a law suit against Named Plaintiffs William Price and Frank Chovan to collect the alleged debts;

   c. Named Plaintiff William Price owed Spicer five thousand five hundred sixty seven dollars and sixty three cents ($5,567.63) principal balance, four hundred thirty dollars and eighty six cents ($430.86) in interest and one thousand three hundred twenty dollars ($1,320.00) in late fees;

   d. Named Plaintiff William Price owed Spicer five hundred fifty six dollars and seventy six cents ($556.76) in attorney's fees;

   e. Named Plaintiff Frank Chovan owed Spicer twenty six thousand seven hundred eighty six dollar and sixty nine cent ($26,786.69) principal balance;

   f. Named Plaintiff Frank Chovan owed Spicer two thousand six hundred seventy eight dollars and sixty seven cents ($2,678.67) in attorney's fees; and

   g. Spicer was entitled to collect compound interest on the Installment Note from Named Plaintiffs William Price, Deborah Price and Frank Chovan.

131. In addition, Spicer and Auto Smart repossessed Named Plaintiffs William Price and Frank Chovan's motor vehicles with knowledge that Spicer had no right to repossess the motor vehicles.

132.    The foregoing acts of Spicer and Murdy constitutes numerous and multiple violations of the MCDCA, § 14-202.

133.    As a result of Spicer and Murdy's harassing and abusive debt collection practices in violation of the MCDCA, Spicer and Murdy caused Named Plaintiffs William Price, Deborah Price and Frank Chovan actual damages in the form of expenses in attempting to correct Defendant's misguided and illegal collection activities, severe emotional distress and mental anguish and embarrassment, including but not limited to severe stress, many sleepless nights, a feeling of hopelessness and headaches.

## VII.    RICO CAUSES OF ACTION

134.    Named Plaintiffs re-allege and incorporate by reference the allegations set forth herein, and further allege:

135.    In connection with the activities giving rise to this action, the Defendants acted with malice, intent and knowledge, and with a wanton disregard for the rights of Named Plaintiffs.

136.    At all relevant times herein, the association-in-fact "enterprise" described herein formed by Defendants Spicer, Murdy and Auto Smart, operated separately and distinct from each individual Defendant.

137.    The association-in-fact enterprise consisted of a three headed monster each of whom were separate and distinct individuals with all the hallmarks of a racketeering organization:  1) Spicer provided the _money_; 2) Auto Smart provided the _brains_; and 3) Murdy provided the _muscle_.

138.    The association-in-fact enterprise was formed some time prior to 2005 and was engaged in interstate commerce in that, _inter alia_, the motor vehicles that were the subject of the

scheme to defraud were purchased from out of state vendors, traveled through multiple states, monies were provided and distributed over state lines and communications used the interstate wires.

139.    On information and belief, Spicer formed the association-in-fact enterprise, by funding Auto Smart with a pool of money to lend to Auto Smart customers at usurious interest rates sometimes at rates greater than seventy percent per year (70%/year).

140.    Auto Smart would lend the money on behalf of Spicer and service the loans on behalf of Spicer.

141.    When a borrower could not pay as required by the usurious installment note required, Auto Smart would repossess motor vehicles from the borrowers even though Spicer did not have any security interest in the motor vehicles.

142.    Auto Smart would later place the repossessed motor vehicle back on its lot for sale and split the proceeds of the sale with Spicer.

143.    After Auto Smart and Spicer repossessed motor vehicles and split the proceeds of the sale, Auto Smart and Spicer would refer the borrowers account to Murdy for further collection efforts.

144.    Murdy, a Maryland licensed attorney, would file debt collection law suits against borrowers requesting judgments against borrowers that were not legally obtainable.

145.    In addition, Murdy would over inflate the amount due and owing on the accounts and request inflated attorney's fees based on compound interest calculations.

146.    Murdy would use the Maryland court system to extract even more money from Spicer borrowers.

147. After Murdy would collect these additional illicit monies, we would maintain a portion of the monies and provide Spicer with the profits.

148. Spicer would take the monies provided to him from Murdy and continue to fund the association-in-fact enterprise with that source of funds.

149. Auto Smart would also distribute profits to Spicer from time to time from repayment of the usurious loans.

150. Spicer would continuously reinvest the profits from the usurious loans into the association-in-fact enterprise.

151. As set forth herein, during the relevant times, and in furtherance of and for the purpose of executing the scheme and artifice to defraud, the Defendants continuously and repeatedly attempted to and succeeded in collecting unlawful and usurious debts.

152. Specifically, without a lender license Spicer was neither allowed to make loans or collect any reimbursement for loans made. Nonetheless, Auto Smart serviced hundreds of Spicer loans and collected hundreds of thousands of dollars on behalf of Spicer on these void loans. In addition, Murdy filed more than sixty (60) debt collection law suits on behalf of Spicer to collect monies on unlawful debts created by Spicer.

153. As set forth herein, during the relevant times, and in furtherance of and for the purpose of executing the scheme and artifice to defraud, the Defendants on numerous occasions used and caused to be used, mail depositories of the United States Postal Service by both placing and causing to be placed mailable matters in said depositories and by removing and causing to be removed mailable matter from said depositories. Including, but not limited to installment notes, correspondence, other loan closing documents and filings with the District Court of Maryland.

154.    Specifically, Named Plaintiff William Price and Frank Chovan each received papers in the mail related to debt collection lawsuits filed by Murdy on behalf of the association-in-fact enterprise.

155.    These mailers were not limited to the Named Plaintiffs William Price and Frank Chovan, but rather, were also sent through the United States mails to each person who was sued by the enterprise.   The co-conspirators repeated this pattern – that is, the fraudulent use of the United States mails – in more than sixty (60) similar debt collection law suits. Each such use of the United States mails in connection with the scheme and artifice to defraud constituted the offense of mail fraud as proscribed and prohibited by 18 U.S.C. § 1341.

156.    As set forth herein, during the relevant times, and in furtherance of and for the purpose of executing the scheme and artifice to defraud, the Defendants on thousands of occasions also used and caused to be used, telephone and other wire transmissions including, but not limited to faxing debt collection lawsuit documents back and forth between Auto Smart, Spicer and Murdy.

157.    In addition, all Defendants received and disseminated funds through bank wire transfers funding the association-in-fact enterprise for future further activities and in furtherance of the scheme to defraud.   Each such use of the telephone and wire transmission in connection with the scheme and artifice to defraud constituted the offense of wire fraud as proscribed and prohibited by 18 U.S.C. § 1343.

158.    The association-in-fact enterprise – which operated continuously for well over ten years and affected more than 100 borrowers transactions, using form documents that intentionally contained false information that was sent through the US Mails and Wires interstate

and the more than sixty (60) debt collection law suits filed against borrowers – constituted a pattern of racketeering activity.

159.    All of these communications and unlawful debt collection efforts concealed the fact that Spicer was not licensed to originate consumer loans and that Spicer had no security interest in the personal property.

160.    Plaintiff and Class members' injuries to their property were caused by Defendants initial contribution and continuing reinvestment from illicit income to create the enterprise that was derived from previous racketeering activity in that the enterprise would not have been in operation had it not been for the Defendants racketeering activities prior to its interaction with Named Plaintiffs.

161.    Named Plaintiffs injuries to their property were also caused by the pattern of racketeering activity of the enterprise in that Named Plaintiffs were overcharged for their loans and never received the benefit of the post-repossession sale proceeds from the enterprise, which was then split between the enterprise's members.

## COUNT THREE
(RICO, 18 U.S.C. § 1962(a) - Spicer, Murdy and Auto Smart)

162.    Named Plaintiffs reallege and incorporate by reference the allegations set forth herein, and further allege:

163.    Each Named Plaintiff is a "person" within the meaning of 18 U.S.C. §§ 1961(3) and 1964(c).

164.    Each Defendant is a "person" within the meaning of 18 U.S.C. §§ 1961(3) and 1962(a).

165.    Through the agreements and through the contractual arrangement and joint management activity between the Defendants, the Defendants formed an association-in-fact with

each other which constitutes an "enterprise" engaged in illegal activities affecting interstate commerce pursuant to 18 U.S.C. §§ 1961(4) and 1962(a).

166.   Each of the conspirators used proceeds derived from a pattern of racketeering activity under 18 U.S.C. §§ 1961(1) and (5) to acquire an interest in, establish, and operate the enterprise.

167.   These unlawful activities included multiple instances of collecting unlawful debts, mail and wire fraud, which occurred uniformly and consistently prior to the existence of the "enterprise."

168.   The common and shared purpose of the Defendants' association-in-fact enterprise was to charge borrowers exorbitantly high interest rates, strip borrowers of the possession of their property and confiscate money from borrowers by any means necessary and to give effect to the scheme described above.

169.   This association-in-fact enterprise by Defendants enabled them to fund a continuing scheme, and to defraud the public by requiring the borrower to pay bogus and illegal amounts.

170.   The association-in-fact enterprise continued as a unit, with a core membership, over a substantial period of time, exceeding ten (10) years, and was an ongoing organization established for an economic motive.  The association-in-fact remained viable and active at the time this action was filed.

171.   Each Defendant each played a substantial and distinct role in the scheme as described herein.

172.   All of these activities of the association-in-fact enterprise form a pattern, continuous in nature, which consists of numerous unlawful individual acts directed to the Named

Plaintiff and many others.  The illegal activities of Defendants persisted over an extended period of time between early 2005 and the present.

173.    Through the use of this illegal and fraudulent scheme, and through its efforts to operate and maintain the enterprise described herein and to facilitate the payment of illegal profits based on usurious interest rates, Defendants have been able to retain money which is rightfully payable to Named Plaintiffs, and were able to collect money not properly due from Named Plaintiffs.

174.    Defendants retained these illegally gained funds and reinvested and used those funds in their operations in violation of 18 U.S.C. § 1962(a).  Furthermore, as alleged above, conspirators each previously acquired illicit funds through similar fraudulent operations prior to forming the association-in-fact and used said proceeds to continue the scheme by investing in the association-in-fact.

175.    Named Plaintiffs have been injured in their property by reason of the operation of the enterprise in this unlawful manner and investment of illicit proceeds from previous racketeering activities in the enterprise.

### COUNT FOUR
(RICO, 18 U.S.C. § 1962(c) - Spicer, Murdy and Auto Smart)

176.    Plaintiffs reallege and incorporate by reference the allegations set forth herein, and further allege:

177.    Each Named Plaintiff is a "person" within the meaning of 18 U.S.C. §§ 1961(3) and 1964(c).

178.    Each Defendant is a "person" within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c).

179.    The association-in-fact described in "Count Three" above was an "enterprise"

within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c), which enterprise was engaged in, and the activities of which affect, interstate commerce.

180.    Defendants were each associated with the enterprise and participated in its management and operation by directing its affairs and by conducting business with each other and assisting in the scheme to charge borrowers and collect from borrowers phony and illegal fees in connection with their motor vehicle loans and repossessing motor vehicles without any right to possession of the motor vehicles. The Defendants each participated, directly and indirectly, in the conduct of the enterprise's affairs through a pattern of unlawful activity under 18 U.S.C. § 1961(i)(b), 1961(5) and 1962(c), to wit:

(a)    Multiple acts of mail fraud, in violation of 18 U.S.C. § 1341;

(b)    Multiple instances of wire fraud in violation of 18 U.S.C. § 1343;

(c)    Multiple instances of collection of an unlawful debt; and

(c)    Multiple instances of interstate transport of money converted or fraudulently obtained in violation of 18 U.S.C. § 2314.

181.    Each Named Plaintiff suffered injury to their property, within the meaning of 18 U.S.C. § 1964(c), by reason of the violation of 18 U.S.C. § 1962(c).

## COUNT FIVE
(RICO, 18 U.S.C. § 1962(d) - Spicer, Murdy and Auto Smart)

182.    Named Plaintiffs reallege and incorporate by reference the allegations set forth herein and further allege:

183.    Named Plaintiffs is a "person" within the meaning of 18 U.S.C. §§ 1961(3) and 1964(c).

184.    Each Defendant is a "person" within the meaning of 18 U.S.C. §§ 1961(3) and 1962(d).

185.     The association-in-fact described in "Count Three" above was an "enterprise" within the meaning of 18 U.S.C. §§ 1961(4) and 1962(a), which enterprise was engaged in, and the activities of which affect, interstate commerce.

186.     The Defendants as co-conspirators were associated with the enterprise described herein, and conspired within the meaning of 18 U.S.C. § 1962(d) to violate § 1962(a) and (c).

187.     The Defendants as co-conspirators conspired to use or invest income derived from a pattern of unlawful activity under 18 U.S.C. § 1961(1) to acquire an interest in, establish and operate the enterprise and have done so through a pattern of unlawful activity including under 18 U.S.C. § 1961(1), *inter alia*, multiple instances of mail fraud in violation of 18 U.S.C. § 1341, wire fraud in violation of 18 U.S.C. § 1343, unlawful debt collection and interstate transport of money converted or fraudulently obtained in violation of 18 U.S.C. § 2314.

188.     The Defendants as co-conspirators conspired to operate, maintain control of, and maintain an interest in the enterprise and have done so through a pattern of unlawful activity including under 18 U.S.C. § 1961(1), *inter alia*, multiple instances of mail fraud in violation of 18 U.S.C. § 1341, wire fraud in violation of 18 U.S.C. § 1343, unlawful debt collection and interstate transport of money converted or fraudulently obtained in violation of 18 U.S.C. § 2314.

189.     Named Plaintiffs have each suffered injury to their property within the meaning of 18 U.S.C. § 1964(c) by reason of the commission of overt acts constituting illegal activity in violation of 18 U.S.C. §§ 1961(1) and 1962(d).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays that this Court:

A.     assume jurisdiction of this case;

B.     enter an order certifying the Class under FED. R. CIV. P. 23(b)(2) and (b)(3);

C. enter an order declaring the rights of Named Plaintiffs and the Class in accordance with MCLL § 12-314;

D. order that Spicer pay to Named Plaintiffs, the Class the statutory penalties imposed by MCLL § 12-314, by returning to Named Plaintiffs and the Class all principal, interest and other compensation with respect to any loan;

E. enter an order declaring that Spicer and Murdy's actions as described above as against Named Plaintiffs are in violation of the MCDCA;

F. award actual and compensatory damages, including an award for emotional distress and mental anguish pursuant to MCDCA, § 14-203 in favor of Named Plaintiffs;

G. Award reasonable attorney's fees and costs of litigation pursuant to *Maryland's Consumer Protection Act*, Md. Code Ann., Comm. Law § 13-408 (*see* 13-301(14)(iii));

H. award to Named Plaintiffs William Price and Frank Chovan as individual damages all amounts paid to Spicer in addition to any amounts received from the sale of a repossessed motor vehicle, plus treble damages and reasonable attorney's fees and costs for violations of RICO;

I. enter an award of pre-judgment and post-judgment interest on all sums awarded to Named Plaintiffs and members of the Class; and

J. award such other relief as the court deems appropriate.

Respectfully submitted,

Z LAW, LLC

Dated: March 17, 2017          By: _____/s/____28191_____

Cory L. Zajdel (Fed. Bar No. 28191)
2345 York Road, Suite #B-13
Timonium, Maryland 21093
(443) 213-1977
clz@zlawmaryland.com

**Attorney for Plaintiffs**

## JURY TRIAL

Named Plaintiffs on behalf of themselves and all others similarly situated demand trial by

jury on all issues so triable.

_____/s/____28191_____
Cory L. Zajdel