IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

WILLIAM PRICE, et al.,                :

      Plaintiffs,                :

v.                :        Civil Action No. GLR-17-736

RALPH M. MURDY, et al.,                :

      Defendants.                :

## **MEMORANDUM OPINION**

THIS MATTER is before the Court on Defendant Ralph M. Murdy's Motion to Dismiss the First Amended Complaint or, in the Alternative, Motion for Summary Judgment and Request for a Hearing (ECF No. 17) and Defendant Samuel Spicer's Motion to Dismiss the First Amended Complaint or, in the Alternative, Motion for Summary Judgment and Request for a Hearing (ECF No. 18).[1]   Also pending are Plaintiffs William Price, Deborah Price (collectively, "the Prices"), and Frank P. Chovan's Motion to Certify Legal Question to the Court of Appeals ("Motion to Certify Question") (ECF No. 22) and Motion to Strike New Argument (ECF No. 23), which the Court construes as a motion for leave to file a surreply.[2]   This action arises from

---

[1] Also pending are Murdy's and Spicer's Motions to Dismiss Complaint or, in the Alternative, Motion for Summary Judgment and Request for Hearing (ECF Nos. 5, 11). The filing of an amended complaint "generally moots any pending motions to dismiss because the original complaint is superseded." Venable v. Pritzker, No. GLR-13-1867, 2014 WL 2452705, at *5 (D. Md. May 30, 2014) aff'd, 610 F.App'x 341 (4th Cir. 2015). Accordingly, the Court will deny these Motions as moot.

[2] Federal Rule of Civil Procedure 12(f) provides that: "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." (emphasis added).  In their Motion, Plaintiffs seek to strike a new

Plaintiffs' putative class action against Defendants related to transactions for the purchase of motor vehicles.

The Motions are ripe for disposition, and no hearing is necessary.  <u>See</u> Local Rule 105.6 (D.Md. 2016).   For the reasons outlined below, the Court will grant Plaintiffs' Motion to Strike and Murdy's Motion to Dismiss the First Amended Complaint or, in the Alternative, Motion for Summary Judgment and grant in part and deny in part Spicer's Motion to Dismiss the First Amended Complaint or, in the Alternative, Motion for Summary Judgment and Plaintiffs' Motion to Certify Question.

## I.   BACKGROUND[3]
### A.   <u>Factual Background</u>

Defendant Auto Smart, LLC ("Auto Smart") is an automobile dealership located in Harford County, Maryland.  (1st Am. Class Action Compl. ["Am. Compl."] ¶ 2, ECF No. 14).  Auto Smart refers its customers to Spicer for financing when they buy its motor vehicles.  (<u>Id.</u> ¶¶ 3–4).  Once Auto Smart and the customer agree on a purchase price, the customer "enter[s] into a loan agreement with Spicer to provide financing" for buying the vehicle.  (<u>Id.</u> ¶¶ 4–5).  Auto Smart accepts payments on the loans on behalf of Spicer.  (<u>Id.</u> ¶ 6).  While servicing the loans, Spicer assesses compound interest, even though the

argument Spicer raised in his Reply related to exhibits Plaintiffs attached to their Opposition.  The Court may permit surreplies "when the moving party would be unable to contest matters presented to the court for the first time in the opposing party's reply."  <u>Khoury v. Meserve</u>, 268 F.Supp.2d 600, 605 (D.Md. 2003) (citing <u>Lewis v. Rumsfeld</u>, 154 F.Supp.2d 56, 61 (D.D.C. 2001)).   Accordingly, the Court construes Plaintiffs' Motion as a motion for leave to file a surreply and will grant Plaintiffs' Motion.
    [3] Unless otherwise noted, the Court describes facts taken from the First Amended Class Action Complaint and accepts them as true.  <u>See</u> <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007) (citations omitted).  To the extent that the Court relies on facts not contained in the First Amended Class Action Complaint, those facts are undisputed.

financing agreements "did not include any language allowing" the assessment of such interest. (Id. ¶¶ 72, 73, 107, 109).

When a borrower defaults on one of his loans, Spicer repossesses the vehicle, and then Spicer and Auto Smart refer the loan to Murdy for collection.[4] (Id. ¶ 23). Murdy then files lawsuits on Spicer's behalf in Maryland state court to collect on the defaulted loans. (Id. ¶ 24).

### 1. The Prices

The Prices purchased three motor vehicles from Auto Smart, and entered into loans with Spicer to finance the purchase of each vehicle. (Id. ¶¶ 47–48, 53–54, 59–60). At some point before March 23, 2009, the Prices bought their first vehicle from Auto Smart, a Mercury Mountaineer. (Id. ¶ 47). After the purchase of their first vehicle but before March 23, 2009, the Prices purchased their second vehicle from Auto Smart. (Id. ¶ 54). The total amount of financing for each of these vehicles was less than $6,000, and Spicer assessed a 24% interest rate on the principal. (Id. ¶¶ 50–51, 56–57).

Around March 23, 2009, the Prices bought their third vehicle from Auto Smart, a 1996 Ford. (Id. ¶ 59). Spicer provided financing for the principal amount of $5,319.00 and assessed a 15% interest rate. (Id. ¶¶ 62–63; Def. Murdy's Mot. Dismiss ["Murdy's Mot."] Ex. 1 ["Murdy's 1st Mot."] at 37, ECF No. 17-2; Pls.' Opp'n Defs.' Mot. Dismiss

---

[4] The First Amended Class Action Complaint states that Murdy was both the "President" and "owner" of The Collection Agency, Inc. ("TCA"), in 2008 and 2009 respectively. (Am. Compl. ¶ 43–44). Plaintiffs do not bring any claims against TCA.

["Pls.' Opp'n"] Ex. A at 4, ECF No. 19-2).[5] The terms of the "Installment Note" between Mr. Price and Spicer required thirty-three monthly payments of $200.00, totaling $6,600.00.[6] (Am. Compl. ¶ 64; Murdy's 1st Mot. at 37; Pls.' Opp'n Ex. A at 4).

At an unspecified date, Spicer, "through his agent Auto Smart," repossessed the 1996 Ford. (Am. Compl. ¶ 77). Auto Smart then resold the vehicle to another customer and did not credit the sale amount to Mr. Price's outstanding loan balance. (Id. ¶¶ 79, 82). Spicer also did not provide Mr. Price with any pre-sale or post-sale repossession notices. (Id. ¶ 78).

In 2012 or 2013, Spicer referred Mr. Price's Installment Note for the 1996 Ford to TCA for collection. (Id. ¶ 83; see Murdy Supp. Aff. ¶ 9, ECF No. 17-3). On March 4, 2013, Murdy filed a debt collection suit against Mr. Price on Spicer's behalf in the Circuit Court for Harford County, Maryland. (Murdy's 1st Mot. at 38). Spicer sued Mr. Price for a $5,567.63 principal balance, $430.86 in interest, $1,320.00 in late fees, and $556.76 in attorney's fees. (Am. Compl. ¶ 84; Pls.' Opp'n Ex. A at 1). Spicer and Murdy requested that judgment be entered against Mr. Price in 2015. (Am. Compl. ¶ 88).

## 2. Frank P. Chovan

Chovan purchased two motor vehicles from Auto Smart, and entered into loans with Spicer to finance the purchase of each vehicle. (Id. ¶¶ 89–90, 95–96). At some point before November 1, 2006, Chovan bought his first vehicle from Auto Smart, a

---

[5] Citations to the parties' exhibits refer to the pagination from the Court's electronic docketing system.

[6] Because only Mr. Price is listed as the borrower on the Installment Note, Ms. Price voluntarily dismisses her claims under Count I with regard to the 1996 Ford purchased on March 23, 2009. (See Pls.' Opp'n at 1 n.1, ECF No. 19).

Chevrolet Cavalier. (Id. ¶ 89). Spicer provided less than $6,000.00 in financing for the purchase of the Cavalier, and assessed a 24% interest rate on the principal. (Id. ¶ 92–93).

Around November 1, 2006, Chovan purchased his second vehicle from Auto Smart, a 1999 Ford Escort. (Id. ¶ 95). Spicer provided financing for the principal amount of $5,500.00 and assessed a 24% interest rate. (Id. ¶¶ 98–99). The terms of the "Installment Note" between Chovan and Spicer required thirty monthly payments of $245.57, totaling $7,367.10. (Id. ¶ 100). By assessing compound interest on Chovan's loan, Chovan incurred $26,786.69 in debt. (Id. ¶ 108).

At an unspecified date, Spicer, "through his agent Auto Smart," repossessed the 1999 Ford Escort. (Id. ¶ 112). Auto Smart then resold the vehicle to another customer and did not credit the sale amount to Chovan's outstanding loan balance. (Id. ¶¶ 114, 117). Spicer also did not provide Chovan with any pre-sale or post-sale repossession notices. (Id. ¶ 113).

In 2012 or 2013, Spicer referred Chovan's debt to Murdy for collection. (Id. ¶ 118; Murdy Supp. Aff. ¶ 9). On February 18, 2015. Murdy filed suit against Chovan. (Am. Compl. ¶ 119; Murdy's 1st Mot. at 34). Spicer sued Chovan for a $26,786.69 principal balance and $2,678.67 in attorney's fees. (Am. Compl. ¶ 119).

**B.      Procedural History**

On March 17, 2017, Plaintiffs sued Murdy, Spicer, and Auto Smart. (the "Original Complaint"). (ECF No. 1). On May 19, 2017, Murdy filed his Motion to Dismiss the Original Complaint. (ECF No. 5). Spicer filed his Motion to Dismiss the Original Complaint on June 22, 2017. (ECF No. 11).

On July 6, 2017, Plaintiffs filed their First Amended Class Action Complaint [the "First Amended Complaint"], alleging the following counts: (1) violations of Maryland Consumer Loan Law ("MCLL"), Md. Code Ann., Com. Law ["CL"] § 12-301 et seq. (West 2018) (Count I); violations of the Maryland Consumer Debt Collection Practices Act ("MCDCA"), CL § 14-201 et seq. (West 2018) (Count II); (3) violations of 8 U.S.C. § 1962(a) (2018) the Racketeering Influenced Corrupt Organizations ("RICO") Act (Count III); violations of RICO 18 U.S.C. § 1962(c) (Count IV); and violations of RICO 18 U.S.C. § 1962(d) (Count V). (ECF No. 14).[7]

On August 4, 2017, both Murdy and Spicer filed Motions to Dismiss the First Amended Complaint or, in the Alternative, Motion for Summary Judgment and Request for Hearing. (ECF Nos. 17, 18). Plaintiffs filed a combined Response to Murdy's and Spicer's Motions on August 25, 2017. (ECF No. 19). On September 8, 2017, Murdy and Spicer filed separate Replies. (ECF Nos. 20, 21).

On September 29, 2017, Plaintiffs filed a Motion to Certify Legal Question to the Court of Appeals. (ECF No. 22). On October 2, 2017, Plaintiffs filed a Motion to Strike Spicer's Reply in Response to Motion. (ECF No. 23). On October 12, 2017, Murdy filed a Response to Plaintiffs' Motion to Certify Legal Question. (ECF No. 25). On October 13, 2017, Spicer filed a combined Response in Opposition to Plaintiffs' Motion to Certify

---

[7] In their Opposition, Plaintiffs voluntarily dismiss all claims related to: (1) RICO (Counts III, IV, and V); (2) pre-computed interest under MCLL (Count I) and MCDCA (Count II); (3) MCDCA (Count II) with respect to Deborah Price; and (4) MCLL (Count I) with respect to the 1996 Ford purchased on March 23, 2009 for Deborah Price only. (Pls.' Mem. Supp. Opp'n at 1 n.1). Accordingly, the Court will dismiss these claims.

Legal Question and Motion to Strike. (ECF No. 26). Plaintiffs filed separate Replies in support of the Motion to Certify Legal Question and Motion to Strike on October 24, 2017. (ECF Nos. 27, 28).

On December 15, 2017, the Court issued an Order that Plaintiffs show cause why Auto Smart, having not been served, should not be dismissed from the case. (ECF No. 29). Because the Court did not receive a response to the Show Cause Order, the Court dismissed Auto Smart from the case on January 5, 2018. (ECF No. 30).

## II.    DISCUSSION

### A.    Conversion of Defendants' Motions

Defendants style their Motions as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for summary judgment under Rule 56. A motion styled in this manner implicates the Court's discretion under Rule 12(d). See Kensington Vol. Fire Dept., Inc. v. Montgomery Cty., 788 F.Supp.2d 431, 436–37 (D.Md. 2011), aff'd, 684 F.3d 462 (4th Cir. 2012). Pursuant to Rule 12(d), when "matters outside the pleadings are presented to and not excluded by the court, the [Rule 12(b)(6)] motion must be treated as one for summary judgment under Rule 56."

The Court "has 'complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it.'" Wells-Bey v. Kopp, No. ELH-12-2319, 2013 WL 1700927, at *5 (D.Md. Apr. 16, 2013) (quoting 5C Wright & Miller, Federal Practice & Procedure § 1366, at 159 (3d ed. 2004, 2012 Supp.)). "This discretion 'should be

exercised with great caution and attention to the parties' procedural rights.'" Id. (quoting Federal Practice & Procedure § 1366, at 149). When exercising this discretion, the Court should assess whether considering materials beyond the pleadings "'is likely to facilitate the disposition of the action,' and 'whether discovery prior to the utilization of the summary judgment procedure' is necessary." Id. (quoting Federal Practice & Procedure § 1366, at 165–67).

Here, Plaintiffs and Murdy submitted copies of the Installment Notes. Murdy submitted copies of the state court dockets, and Plaintiffs submitted copies of the complaints filed in state court. Because these materials will aid the Court in deciding a question of law raised in Spicer's Motion for Summary Judgment, i.e., whether the transactions at issue are loans and more discovery is not necessary on this issue, the Court will convert Spicer's Motion as to the MCLL claims into one for summary judgment. The Court declines, however, to convert Spicer's and Murdy's Motions to Dismiss as to the MCDCA claims into ones for summary judgment because considering the extra-pleading materials does not facilitate the Court's decision on these Motions.[8]

---

[8] Plaintiffs request that "the Court provide them the ability to take discovery" prior to the Court reviewing Murdy's extra-pleading materials. (Pls.' Opp'n at 2). Plaintiffs "do not object" to the Court reviewing copies of the Installment Notes or the state court dockets in Mr. Price and Chovan's cases because they "relate to allegations central to the Complaint and are a matter of public record." (Pls.' Opp'n at 3–4 n.3). Plaintiffs also request that the Court not consider Murdy's Affidavits (Murdy Aff., Murdy's 1st Mot. at 27–29; Murdy Supp. Aff.) or Retainer Agreements between Murdy and Alfred N. Kramer, Esq., (Murdy's 1st Mot. at 26), Murdy and Auto Smart, (id. at 31), and Murdy and Spicer, (id. at 32). Although the Court acknowledges Plaintiffs' requests, the Court is not persuaded for two reasons. First, Plaintiffs do not express their request for discovery in a Rule 56(d) affidavit; they limit their request to their opposition memoranda. This alone is reason to deny Plaintiffs' request. See Harrods Ltd. v. Sixty

**B.** **Motion to Certify Question**

Plaintiffs request that the Court certify the following questions to the Maryland Court of Appeals regarding the MCLL:

> 1. Whether an advance of money with a principal balance less than six thousand dollars entered into between Party A and Party B to finance the purchase of a motor vehicle from Party C is a "loan" under the MCLL?
>
> 2. Whether the MCLL § 12-302's licensing requirement is an "other specialty" subject to Maryland's twelve year limitations period under Md. Code Ann., Cts. & Jud. Proc. 5-102(a)(6)?

As discussed below, the Court will deny Plaintiffs' request as to the first question and grant Plaintiffs' request as to the second question. The Court first addresses Plaintiffs' MCLL claims.

**C.** **MCLL Claims**

**1.** **Rule 56 Standard of Review**

In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the nonmovant, drawing all justifiable inferences in that party's favor. Ricci v. DeStefano, 557 U.S. 557, 586 (2009); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158–59 (1970)). Summary judgment is proper when the movant demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers,

---

Internet Domain Names, 302 F.3d 214, 244 (4th Cir. 2002). Second, in assessing Defendants' Motions, the Court considers only the materials Plaintiffs do not object to the Court reviewing.

or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a), (c)(1)(A). Significantly, a party must be able to present the materials it cites in "a form that would be admissible in evidence," Fed.R.Civ.P. 56(c)(2), and supporting affidavits and declarations "must be made on personal knowledge" and "set out facts that would be admissible in evidence," Fed.R.Civ.P. 56(c)(4).

Once a motion for summary judgment is properly made and supported, the burden shifts to the nonmovant to identify evidence showing there is genuine dispute of material fact. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986). The nonmovant cannot create a genuine dispute of material fact "through mere speculation or the building of one inference upon another." Othentec Ltd. v. Phelan, 526 F.3d 135, 141 (4th Cir. 2008) (quoting Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985)).

A "material fact" is one that might affect the outcome of a party's case. Anderson, 477 U.S. at 248; see also JKC Holding Co. v. Wash. Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001) (citing Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001)). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248; accord Hooven-Lewis, 249 F.3d at 265. A "genuine" dispute concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. Anderson, 477 U.S. at 248. If the nonmovant has failed to

make a sufficient showing on an essential element of her case where she has the burden of proof, "there can be 'no genuine [dispute] as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986).

## 2. Analysis

Plaintiffs bring their MCLL claims against Spicer only. Plaintiffs allege that Spicer violated four sections of the MCLL: (1) CL § 12-302 for failing to obtain a license; (2) CL § 12-306(a)(7)(iii) for failing to provide any notices related to repossession of cars; (3) CL § 12-306(a)(6)(ii) and (d)(1) for charging and collecting compound interest; and (4) CL § 12-307.1 for charging and collecting inflated or uncollectable attorneys' fees.

Spicer advances two main arguments regarding Plaintiffs' MCLL claims. First, Spicer contends that Plaintiffs entered into installment contracts with Spicer, not loans, and therefore Spicer did not have to be licensed under the MCLL. Specifically, Spicer asserts that the transactions were installment sales because he retained a security interest in the vehicles. Second, Spicer argues that Maryland's three-year statute of limitations applies, and therefore Plaintiffs' MCLL claims are time-barred. Spicer also asserts that the Court should dismiss the MCLL claims premised on the charging and collecting of attorney's fees. The Court addresses Spicer's arguments in turn.

### i. Whether Spicer's transactions with Plaintiffs are "loans"

At bottom, the Court concludes that the transactions are loans, and therefore Spicer was required to be licensed.

The MCLL applies to loans under $6,000. CL § 12-303(a). The MCLL defines a "loan" as "any loan or advance of money or credit made under [the MCLL]." CL § 12-301(e); see also Md. Code Ann., Fin. Inst. § 11-201(e) (West 2018) (defining "loan" as "any loan or advance of money or credit made under [the MCLL]").

Here, there is no dispute of material fact that the transactions at issue are indeed loans under the MCLL. Both documents, styled as "Installment Notes," identify Chovan and Mr. Price as "borrower." (Murdy's 1st Mot. at 33, 37; Pls.' Opp'n Exs. A, B, ECF Nos. 19-2, 19-3). Under the terms of Chovan's November 1, 2006 Note, Chovan received a "Principal Amount" of $5,500, in exchange for an obligation to pay Spicer $245.57 per month at 24% per year interest. (Murdy's 1st Mot. at 33; Pls.' Opp'n Ex. 3). Under the terms of Mr. Price's March 23, 2009 Note, Mr. Price received a "Principal Amount" of $5,319.00, in exchange for an obligation to pay Spicer $200.00 per month at 15% yearly interest. (Murdy's 1st Mot. at 37; Pls.' Opp'n Ex. A). Both Chovan and Mr. Price, therefore, received a loan of under $6,000 from Spicer.

Whether Spicer retained a security interest in the vehicles is of no consequence. Further, in the state court filings Spicer states that he "privately finances customers for the dealership Auto[ ]Smart, LLC of Aberdeen. Defendant purchased automobile and financed through [Spicer]." (Pls.' Opp'n Exs. A, B). These statements from Spicer that he "financed" Plaintiffs' automobile purchases is further evidence that these transactions

are loans. Because the Court concludes that these transactions are loans, the Court further concludes that Spicer had to be licensed under the MCLL to enter into them. As a result, the Court will deny Plaintiffs' Motion to Certify Question as to the first question.

### ii.    Statute of Limitations

Plaintiffs contend that the MCLL is an "other specialty," and therefore Maryland's twelve-year statute of limitations applies. This is the same issue as the second question Plaintiffs move for the Court to certify in their Motion to Certify Question.[9] Accordingly, the Court addresses Plaintiffs' Motion as to this question.[10]

The general statute of limitations for civil actions is three years. Md. Code Ann., Cts. & Jud. Proc. ["CJP"] § 5-101. CJP § 5-102(a)(6) provides a twelve-year statute of limitations for causes of action brought under a specialty statute. An alleged violation of a statute is an "other specialty" under CJP § 5–102(a)(6) if and only if:

> (1) the duty, obligation, prohibition, or right sought to be enforced is created or imposed solely by the statute, or a related statute, and does not otherwise exist as a matter of common law; (2) the remedy pursued in the action is authorized solely by the statute, or a related statute, and does

---

[9] Plaintiffs also argue that the Installment Notes are sealed instruments, and therefore the twelve-year statute of limitations under CJP §§ 5-102(a)(1) or (a)(5) applies to their MCLL claims. Plaintiffs' argument misses the mark. In determining if § 5-102 to applies, the Court asks two questions: (1) "Is the contract a specialty?"; and (2) "Is the cause of action 'on' the contract?" Wellington Co. Profit Sharing Plan & Tr. v. Shakiba, 952 A.2d 328, 344 (Md.Ct.Spec.App. 2008). A cause of action is "on" the contract if it is "grounded on some type of obligation set forth in the instrument." Id. (quoting Mattingly v. Hopkins, 253 A.2d 904, 910 (Md. 1969)). Here, Plaintiffs' cause of action is grounded in a statute—the MCLL—not the Installment Notes. Thus, §§ 5-102(a)(1) and (a)(5) do not apply.

[10] Plaintiffs and Defendants address the statute of limitations argument both in their briefs on the Motions to Dismiss and on the Motion to Certify. The Court, therefore, considers all of the arguments together in evaluating the Motion to Certify.

not otherwise exist under the common law; and (3) if the action is one for civil damages or recompense in the nature of civil damages, those damages are liquidated, fixed, or, by applying clear statutory criteria, are readily ascertainable.

Master Fin., Inc., v. Crowder, 972 A.2d 864, 875 (Md. 2009).

Plaintiffs argue that the MCLL satisfies all three prongs of the Crowder test. As to the first prong, Plaintiffs contend that the MCLL "created and imposes a number of duties and prohibitions that are virtually identical to those brought under the [Secondary Mortgage Loan Law] in Crowder." (Pls.' Opp'n at 23). Plaintiffs point to the provisions of the MCLL that they allege Spicer violated—the licensing requirement, interest rate limits, and repossession notice requirements. As to the second prong, Plaintiffs maintain that the MCLL creates remedies that did not exist at common law—forfeiture of "any principal, interest, or other compensation" related to the unenforceable loan. CL § 12-314(b)(2). As to the third prong, Plaintiffs submit that damages under the MCLL are readily ascertainable, and plaintiffs may not seek actual damages. See id. Thus, the MCLL appears to satisfy the Crowder test for a statutory specialty with a twelve-year statute of limitations under CJP § 5-102(a)(6).

Spicer counters that the three-year statute of limitation applies, and therefore the Court should decline to certify Plaintiffs' question. In support of his argument, Spicer points to Arrington v. Colleen, Inc., No. AMD 00-191, 2000 WL 34001056, at *8 (D.Md. Aug. 7, 2000), in which this Court applied a three-year statute of limitations to the plaintiffs' MCLL claims. Spicer also argues that the MCLL does not satisfy the Crowder test. Specifically, Spicer maintains that the duty, obligation, or right to be enforced under

the MCLL was available at common law—namely, the "prohibition of usurious loans." (Spicer's Reply at 9–10, ECF No. 21).  A conclusion that the duty, obligation, or right to be enforced existed at common law would foreclose application of the twelve-year statute of limitations to the MCLL.[11]

Under the Maryland Certification of Questions of Law Act, a federal district court may certify a question of law to the Maryland Court of Appeals.  CJP § 12-603 (West 2018).  The Act provides that:

> The Court of Appeals of this State may answer a question of law certified to it by a court of the United States or by an appellate court of another state or of a tribe, if the answer may be determinative of an issue in pending litigation in the certifying court and there is no controlling appellate decision, constitutional provision, or statute of this State.

Here, Mr. Price took out three loans from Spicer, the last of which was signed on March 23, 2009.  If the three-year statute of limitation applies, it passed in March 23, 2012.  Similarly, Chovan took out his loan from Spicer on November 1, 2006.  If the three-year statute of limitations applies, it passed on November 1, 2009.  Put simply, if the statute of limitations is three years, Plaintiffs' MCLL claims would be time-barred. The answer to which statute of limitations applies to the MCLL—three years or twelve

---

[11] Murdy, for his part, argues that certification is inappropriate because the proposed question does not resolve the claims against him.  Murdy further asserts that certification is inappropriate because the MCLL does not provide an independent cause of action; it only provides an administrative penalty.  Because the Court will ultimately dismiss all claims against Murdy and Plaintiffs do not bring MCLL claims against him, the Court declines to address Murdy's arguments.

years—not only "<u>may</u> be determinative of an issue," it would conclusively determine whether Plaintiffs can even bring their MCLL claims.

There is also no controlling appellate decision addressing this issue. Although Spicer correctly points out that <u>Arrington</u> applied a three-year statute of limitations to the plaintiffs' MCLL claims, the issue of whether MCLL claims were another specialty was not before the Court. Further, <u>Arrington</u> was decided in 2000, and the Maryland Court of Appeals articulated the <u>Crowder</u> test for whether a statute is "another specialty" in 2009. Since the <u>Crowder</u> decision, this Court has twice certified questions to the Court of Appeals to address whether a statute is "another specialty." <u>See</u> <u>NVR Mortg. Fin., Inc. v. Carlsen</u>, 96 A.3d 202, 203 (Md. 2014); <u>AGV Sports Grp., Inc. v. Protus IP Sols., Inc.</u>, No. RDB-08-3388, 2010 WL 1529195, at *5 (D.Md. Apr. 15, 2010), <u>certified question answered</u>, 10 A.3d 745 (Md. 2010).

Accordingly, the Court will certify Plaintiffs' second question to the Court of Appeals of Maryland. The Court will file a separate Certification Order.

### iii. Attorney's fees

Spicer advances three arguments that Plaintiffs' MCLL claim premised on the charging of attorney's fees fails: (1) it is time-barred under the three-year statute of limitations; (2) the MCLL permits the charging and collecting of attorney's fees and he did not charge more than the amount authorized by the statute; and (3) the lawsuits against Mr. Price and Chovan were voluntarily dismissed without the assessing of attorney's fees. The Court disagrees.

The MCLL authorizes a lender to, "[o]n any loan with an original principal balance of more than $2,000 . . . charge and collect from the borrower court costs and attorney's fees not exceeding 15 percent of the amount due and payable under the terms of the loan." CL § 12-307.1(a) (West 2018). A "lender" is "a person who makes a loan under [the MCLL]." CL § 12-301(b) (West 2018). A person may not make loans under the MCLL "unless the person is licensed." CL § 12-302.

Here, Spicer overlooks the fact that the MCLL permits <u>licensed</u> lenders to charge and collect attorney's fees. Because Spicer was not licensed, he was not authorized to charge attorney's fees regardless of whether the amounts charged were within the 15% statutory limit. That Spicer did not actually collect any attorney's fees is of no consequence because he was not permitted to charge them in the first instance. Finally, because it is unclear which statute of limitations applies to MCLL claims—three or twelve—the Court declines to dismiss the claims on this ground at this time.

In sum, the Court concludes that the transactions at issue are loans under the MCLL, and therefore Spicer was required to be licensed. Because Spicer does not address Plaintiffs' specific allegations that he violated the MCLL in failing to obtain a license, failing to provide any notices related to repossession of cars, and charging and collecting compound interest, these claims against Spicer remain.

**D.     MCDCA Claims**

**1.     Rule 12(b)(6) Standard of Review**

"The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of

defenses." King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 243–44 (4th Cir. 1999)). A complaint fails to state a claim if it does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), or does not "state a claim to relief that is plausible on its face," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555). Though the plaintiff is not required to forecast evidence to prove the elements of the claim, the complaint must allege sufficient facts to establish each element. Goss v. Bank of Am., N.A., 917 F.Supp.2d 445, 449 (D.Md. 2013) (quoting Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012)), aff'd sub nom., Goss v. Bank of Am., NA, 546 F.App'x 165 (4th Cir. 2013).

In considering a Rule 12(b)(6) motion, a court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. Albright v. Oliver, 510 U.S. 266, 268 (1994); Lambeth v. Bd. of Comm'rs of Davidson Cty., 407 F.3d 266, 268 (4th Cir. 2005) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). But, the court need not accept unsupported or conclusory factual allegations devoid of any reference to actual

events, United Black Firefighters v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979), or legal conclusions couched as factual allegations, Iqbal, 556 U.S. at 678.

Rule 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud." Fed.R.Civ.P. 9(b). ) This particularity standard requires the plaintiff to "describe the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." Galante v. Ocwen Loan Servicing LLC, No. ELH-13-1939, 2014 WL 3616354, at *9 (D.Md. July 18, 2014) (quoting United States ex rel. Owens v. First Kuwaiti Gen. Trading & Contracting Co., 612 F.3d 724, 731 (4th Cir. 2010). While Rule 9 "does not require the elucidation of every detail of the alleged fraud," it "does require more than a bare assertion that such a cause of action exists." Amenu-El v. Select Portfolio Servs., No. RDB-17-2008, 2017 WL 4404428, at *2 (D.Md. Oct. 4, 2017) (quoting Mylan Labs., Inc. v. Akzo, N.V., 770 F. Supp. 1053, 1074 (D.Md. 1991)).

### 2. Analysis

Plaintiffs bring claims under the MCDCA against both Spicer and Murdy. Specifically, Plaintiffs allege that Spicer and Murdy violated § 14-202(5), § 14-202(6), and § 14-202(8) of the MCDCA by: (1) filing lawsuits in court without a right to collect; (2) attempting to collect debts in amounts greater than the amount owed; and (3) demanding attorneys' fees not allowed by contract or law.

Both Spicer and Murdy move to dismiss Plaintiffs' MCDCA claims. Although Murdy and Spicer submitted separate Motions and briefs, they advance the same three

principal arguments for dismissal.[12]  First, Defendants contend that Plaintiffs fail to state

a claim because they do not allege that they acted with knowledge or reckless disregard

as to the invalidity of the debt.  Second, Defendants maintain that Plaintiffs fail to state a

claim related to the charging of compound interest because the charging of compound

interest is a dispute over the amount of debt, and not debt-collection practices.  Third,

Defendants argue that Plaintiffs' claims are time-barred by the three-year statute of

limitations.[13]  The Court agrees with Defendants' first and third arguments.  The Court

addresses Defendants' statute of limitations argument first.

### i.      Statute of Limitations

In brief, the Court concludes that it will dismiss Plaintiffs' MCDCA claims to the

extent that they are premised on Spicer and Murdy's attempts to collect a debt that

occurred beyond the three years before they filed their Complaint.

The MCDCA has a three-year statute of limitations.  Fontell v. Hassett, 870

F.Supp.2d 395, 415 (D.Md. 2012); see also CJP § 5-101 (West 2018).  Plaintiffs argue

that any collection attempt within three years of the filing of this Complaint is sufficient

to satisfy the three-year statute of limitations.  In support of their argument, Plaintiffs

point to allegations in the Amended Complaint that Defendants attempted to collect debt

and Plaintiffs made payments on the debt.  Specifically, Plaintiffs allege that Spicer and

---

[12] Murdy incorporates his first Motion to Dismiss (ECF No. 5) by reference into his presently pending Motion.

[13] The parties vigorously dispute whether Spicer's need to be licensed and Murdy's knowledge of Spicer's licensure status is a mistake of fact or mistake of law. This dispute is not relevant at this stage because the Court is merely assessing whether Plaintiffs sufficiently state a claim.

Murdy "demanded and received payment" on debts from the Prices in 2014 and 2015, (Am. Compl. ¶ 87), and from Chovan in 2015, (id. ¶ 122). Plaintiffs also point to their allegations that Spicer and Murdy filed a debt-collection action against Chovan on February 18, 2015. (Id. ¶ 119).

Here, the Court agrees with Plaintiffs that to the extent that their MCDCA claims are premised on Defendants' attempts to collect debt in 2014 and 2015, the claims fall within the three-year statute of limitations. But Plaintiffs' claims premised on Defendants' attempts to collect debts in 2012 and 2013 fall outside of the statute of limitations, and, therefore, are time-barred.

As to Plaintiffs' allegations that fall within the three-year statute of limitations, Spicer argues that Chovan was on inquiry notice concerning Spicer's alleged wrongful conduct under the MCDCA "as early as March 1, 2012," when his debt was forwarded to TCA, which started the statute-of-limitations clock.[14] (Mem. Supp. Def. Spicer's Mot. Dismiss ["Spicer's Mot."] at 16, ECF No. 18-1). As a result, Spicer contends, Chovan's MCDCA claim premised on the 2015 lawsuit is time-barred. Similarly, Murdy contends that Plaintiffs were on inquiry notice that the amount Murdy sought to collect included compound interest "as early as 2013 and 2013." (Murdy's Mot. at 11, ECF No. 17-1). The Court disagrees.

In support of their argument, Defendants rely on Jason v. National Loan Recoveries, LLC, 134 A.3d 421 (Md.Ct.Spec.App. 2016). In Jason, an unlicensed debt

---

[14] The Court notes that Plaintiffs do not state in their Complaint the date on which Chovan's account was forwarded to TCA for collection.

collector brought suit against a debtor in 2008, and then obtained judgment against the debtor and executed a writ of garnishment in 2009. Id. at 423. In 2013, the debtor brought a class action lawsuit against the debt collector for, among other claims, violating the MCDCA in collecting debts without a license. Id. at 424. The trial court dismissed the claims as time-barred under Maryland's three-year statute of limitations, and the Court of Special Appeals of Maryland affirmed. Id. at 432. The Court of Special Appeals reasoned that the plaintiff was on inquiry notice to investigate any potential legal claims against the debt collector at the earliest when he filed a lawsuit against the plaintiff and at the latest when defendant had garnished his bank account—which occurred in 2008 and 2009. Id. As a result, the court concluded that if the debt collector had a duty to disclose his licensure status, the plaintiff's claims would nevertheless be time-barred by the three-year statute of limitations. Id.

In this case, Spicer forwarding Plaintiffs' accounts to Murdy does not establish that Plaintiffs were aware of Defendants' attempts to collect the debt. All of the actions by the debt collector in Jason were affirmative conduct of which the plaintiff at the very least should have been aware. That is not the case here. Although Murdy asserts in his brief that he "sent Plaintiffs communications" stating that they owed the amount that allegedly included the impermissible compound interest, this information is not properly before the Court because it appears in Murdy's affidavit. In any event, Murdy's affidavit only states that he received the accounts for collection at that time, not that he sent Plaintiffs communications regarding their debt. (See Murdy Supp. Aff. ¶ 9).

To summarize, Plaintiffs' MCDCA claims are dismissed to the extent that they are premised on Spicer and Murdy's attempts to collect a debt that occurred three years before they filed their Complaint. Only Chovan's claim related to the 2015 lawsuit against him and Plaintiffs' claims that Spicer and Murdy attempted to collect debt from them in 2014 and 2015 are not time-barred.

### ii.    Sections 14-202(5) and (6)

Section 14-202(5) only permits a debt collector to communicate with the debtor regarding an alleged debt, unless there is "a legitimate business need for the information." CL § 14-202(5). Section 14-202(6) prohibits a debt collector, during debt collection activity, from "[c]ommunicat[ing] with the debtor or a person related to him with the frequency, at the unusual hours, or in any other manner as reasonably can be expected to abuse or harass the debtor." CL § 14-202(6).

Spicer moves to dismiss the claims against him under §§ 14-202(5) and (6) because Plaintiffs fail to allege that Spicer engaged in any activity prohibited by those sections. The Court agrees.

Here, the Amended Complaint is bereft of any factual allegations that either Spicer or Murdy communicated with a third party regarding Plaintiffs' debts, or that Spicer or Murdy engaged in abusive or harassing debt collection practices.[15] To the extent that Plaintiffs allege that Defendants filed debt collection actions against them, the Fourth

---

[15] That Murdy did not raise this specific argument in his Motion does not preclude the Court from applying it to the MCDCA claims against him. See U.S. ex rel. May v. Purdue Pharma L.P., 737 F.3d 908, 913 n.3 (4th Cir. 2013) (noting that because a party did not raise a particular argument, that "does not preclude our consideration and application of it").

Circuit has held that this is not abusive or harassing. See Conteh v. Shamrock Cmty. Ass'n, Inc., 648 F.App'x 377, 380 (4th Cir. 2016) (holding that "a debt collector's resort to state court proceedings and the filing of a writ of execution cannot legally constitute a communication that harasses or abuses the debtor").

Thus, the Court concludes that Plaintiffs fail to state an MCDCA claim against Defendants premised on violations of §§ 14-202(5) and (6). Accordingly, the Court will dismiss these claims.

### iii. Section 14-202(8)

Under CL § 14-202(8), a debt collector may not "[c]laim, attempt, or threaten to enforce a right with knowledge that the right does not exist." To state a claim under § 14-202(8) of the MCDCA, Plaintiffs must establish two elements: "(1) that [d]efendants did not possesses the right to collect the amount of debt sought; and (2) that [d]efendants attempted to collect the debt knowing that they lacked the right to do so." Lewis v. McCabe, Weisberg & Conway, LLC, No. DKC 13-1561, 2014 WL 3845833, at *6 (D.Md. Aug. 4, 2014). "Maryland courts have consistently interpreted the MCDCA to require plaintiffs to allege that defendants acted with knowledge that the 'debt was invalid, or acted with reckless disregard as to its validity.'" Lembach v. Bierman, 528 F.App'x 297, 304 (4th Cir. 2013) (emphasis added) (quoting Shah v. Collecto, Inc., No. DKC 2004–4059, 2005 WL 2216242, at *11 (D.Md. Sept. 12, 2005)); see also Akalwadi v. Risk Mgmt. Alts., Inc., 336 F.Supp.2d 492, 511 (D.Md. 2004) (explaining that the plaintiff must show the defendant acted with actual knowledge or reckless disregard as to the falsity of the information to be liable under the MCDCA). MCDCA claims are also

subject to Rule 9(b)'s heightened pleading standard. <u>Amenu-El v. Select Portfolio Servs.</u>, No. RDB-17-2008, 2017 WL 4404428, at *4 (D.Md. Oct. 4, 2017).

Both Defendants move to dismiss Plaintiffs' claims under § 14-202(8) on the grounds that Plaintiffs fail to plead knowledge or reckless disregard as to the invalidity of the debt. Murdy also more specifically contends that Plaintiffs fail to allege that Murdy acted with knowledge or reckless disregard as to Spicer's need to be licensed under the MCLL. The Court agrees with Defendants.

Here, the Amended Complaint is devoid of allegations that Defendants knew or acted with reckless disregard as to the invalidity of the debt. Indeed, the only statement related to knowledge in the Amended Complaint is that "Spicer and Auto Smart repossessed [Plaintiffs'] motor vehicles with knowledge that Spicer had no right to repossess the motor vehicles." (Am. Compl. ¶ 151). Not only does this allegation fail to pass muster under Rule 9's heightened pleading standard, it also fails to state a claim because the repossession of an automobile is not an attempt to collect debt. <u>Davis v. Toyota Motor Credit Corp.</u>, 251 F.Supp.3d 925, 932 (D.Md. 2017) (concluding that "the repossession of the vehicle at issue . . . was neither the collection of [the plaintiff's] debt nor an attempt to collect it"). This allegation also does not implicate Murdy. Further, Plaintiffs' statements that "Spicer and Murdy demanded and received payment" from the Prices in 2014 and 2015 and from Chovan in 2015 similarly fail to allege that Spicer and Murdy acted with knowledge or reckless disregard. Plaintiffs' allegations related to the 2015 lawsuit against Chovan fail for the exact same reason.

As to Murdy's knowledge that Spicer needed to be licensed under the MCLL, Plaintiffs point to allegations in the Amended Complaint regarding an "Advisory Notice" from the Maryland Collection Agency Licensing Board warning debt collectors that it is "illegal to pursue collection actions against Maryland residents for loans that were made by unlicensed entities." (Am. Compl. ¶ 26). Plaintiffs do not allege, however, that Murdy knew or should have known about this Advisory Notice. As a result, Plaintiffs' claims fail.

The Court, therefore, concludes that Plaintiffs fail to state a claim under § 14-202(8). Accordingly, the Court will grant Defendants' Motions as to these claims.

In sum, Plaintiffs' MCDCA claims based on Spicer and Murdy's attempts to collect a debt that occurred more than three years prior to the filing of their Complaint are time-barred. But Chovan's claim related to the 2015 lawsuit against him and Plaintiffs' claims that Spicer and Murdy attempted to collect debt from them in 2014 and 2015 fall within the three-year statute of limitations. All of Plaintiffs' MCDCA claims are dismissed, however, because they fail to allege that Spicer and Murdy acted with requisite knowledge.

## III. CONCLUSION

For the forgoing reasons, the Court will grant Plaintiffs' Motion to Strike New Argument (ECF No. 23), construed as a motion for leave to file a surreply. The Court will also grant Murdy's Motion to Dismiss the First Amended Complaint or, in the Alternative, Motion for Summary Judgment and Request for a Hearing (ECF No. 17). The Court will grant in part and deny in part Spicer's Motion to Dismiss the First

Amended Complaint or, in the Alternative, Motion for Summary Judgment and Request for a Hearing (ECF No. 18) and Plaintiffs' Motion to Certify Legal Question to the Court of Appeals (ECF No. 22). The Court will also deny as moot Murdy's Motion to Dismiss Complaint or, in the Alternative, Motion for Summary Judgment and Request for Hearing (ECF No. 5) and Spicer's Motion to Dismiss Complaint or, in the Alternative, Motion for Summary Judgment and Request for Hearing (ECF No. 11). A separate Order follows.

Entered this 30th day of March, 2018.

/s/
_____
George L. Russell, III
United States District Judge